Good morning, Your Honors. My name is Tony Sasson. I represent Jose Chagoya-Morales in this matter, and there are three issues in this matter that spring from what is, at first glance, what would be a simple case of illegal re-entry, where the only two elements are whether the person's previously been deported and whether they legally re-entered the country when they were detained. But from there spring two very interesting issues. The first one relates to the Fourth Amendment and the district court's denial of the motion to quash that we filed in that court without an evidentiary hearing. To make it very brief, the facts is my client was a passenger in his spouse's car, undercover Chicago Police Department, in an unmarked car on a special detail, according to the police reports in the motion filed, executed a traffic stop because they believed that the driver, the spouse of my client, was on her cell phone. We filed a motion to quash the stop and arrest, and now subsequent to that, after the stop was executed, my client was taken out of the car, gave an incorrect name. During a frisk, there was some marijuana found a very small amount in his shoe or his sock. Back at the police station, they uncovered his name, his identity, and the fact that he was illegally in the country. The issue that is alarming in the district court is in denying the motion without an evidentiary hearing, the district court found that the evidence of identity is not susceptible to a Fourth Amendment analysis and cannot be suppressed. I believe that that ruling, if affirmed as stated, essentially throws the Fourth Amendment out the window. You know, you framed the challenge as evidentiary and not jurisdictional, but by seeking to literally suppress evidence of himself, because his very presence is the crime, he is in fact challenging the court's jurisdiction over him, isn't he? Well, I disagree with that conclusion, and it's obviously a very critical piece of evidence to the government's case in this particular case, but when you look at the Fourth Amendment issue as a whole and the impact it has, essentially, it's the ultimate bootstrap argument that, well, once we found out that you're who you are and you're not supposed to be here, then that justifies the stop that was not proper in its inception, and I think . . . I had long a rule that was announced in INS versus Lopez Mendoza. I'm sorry, Judge, I didn't mean to interrupt. Yes, as our brief illustrates in the Lopez Mendoza case, the district court and the government in our case clung to the ruling as it related to the jurisdictional issue raised in the Lopez Mendoza case. There were two issues addressed separately by the court in that opinion, one being jurisdictional and one being evidentiary, and they were addressed separately, and actually they were brought in separate cases. There are two defendants or appellants in that case. And at the end of the Lopez Mendoza line of cases, after specifying and pointing out that it's ruling related to a civil deportation proceeding, not a criminal case, that the evidentiary issue concerning identity was still subject to a Fourth Amendment analysis on a motion to quash. So I think that the application of that case blindly or just automatically to the issue of identity in an evidentiary or a motion to quash Fourth Amendment analysis is improper and expands that ruling to essentially abrogate the Fourth Amendment. Any police officer can come up to any individual on the street with no reason whatsoever and start inquiring about identity, detaining that person to make an inquiry about identity, because identity would be specifically accepted as an exception to the Fourth Amendment. And I don't believe that that's what Lopez Mendoza meant to do, but that's what it would do if read this way. Also, in the Garcia-Garcia opinion, which is this circuit's opinion, even though that is a criminal case, I don't believe that, first of all, in reading that case, I believe the application of Lopez Mendoza was indicta. But in the facts of that case, it occurred after an evidentiary hearing and after the officers in that case, for a period of time, surveilling the, I believe it was a garage where the search was deemed to be inappropriate. Independent of the evidence in that search, during surveillance, they were able to confirm that person's identity. So that is distinguishable from our case, other than they had an independent grounds for the identity evidence that wasn't suppressed. Well, but, you know, in Garcia-Garcia, we noted that although the stop was lawful, a successful challenge to the stop wouldn't have helped the defendant under the rule of Lopez Mendoza, because the defendant's identity could not be suppressed, even if it was obtained in violation of the Fourth Amendment. Well, the difference, though, is they were aware of his identity prior to his arrest in Garcia-Garcia. In our case, they had no idea who my client was. He was, at the time, an innocent passenger in a car on a busy street at about 545 in the afternoon on the southwest side of Chicago. He would have driven right by and they wouldn't have known if it was him or, you know, any other person it might have been. At least from the evidence that was produced in the district court. So I believe it's distinguishable from Garcia-Garcia because, as I said, the police in Garcia-Garcia knew of the identity prior to the search and independent of any illegal conduct. Also, I believe, if I'm reading that case correct, that any reference to Lopez Mendoza as the basis for the ruling in Garcia-Garcia was dicta as opposed to a holding. It seemed to be kind of a throw-in statement after they had already concluded that there was sufficient other evidence independent of an illegal search. Other than the other issue in this case is similar to the issue you heard in the prior argument, except it's not a career criminal application. It comes out of the section 2L1.2 of the guidelines in the use of crime of violence as an enhancing factor in the guideline analysis of Mr. Chayoga-Morales' sentence. Here, there's some differences in this area of laws in such a flux right now. I don't want to call them minor because they may be significant. Here, the section that was applied, the language in the guideline states only that a crime of violence. It doesn't define the crime of violence in the language of the guideline. It doesn't contain the force clause language or the residual clause language. Again, I'm referring only to the sentencing guideline language. The further information used in this case to add the 16-point increase was from the crime of violence definition in the application notes to that section. It's our position that that was an error, and the triggering event is an aggravated robbery. It's our position that under Johnson, actually I'm going to talk about two Johnsons, one in 2015 and one in 2010, that the application notes are not definitional and cannot be used. When left with that, we have merely a crime of violence with no other specifics in this particular section that was used to enhance. Based on that, I would say that the enhancement was improper because they're not. I would further say that since the application notes are not definitional, the force clause that's contained in the application notes cannot be used in this particular case for the 16-level enhancement. The other points, and I realize I'm short on time, so I want to just touch on these in the event there's any questions. As I said, aggravated robbery was the prior in this case that triggered. The district court in sentencing relied a lot on the crime of robbery, which is specifically stated in the application notes to the section. In addition to the argument that that should not be definitional, our position is an Illinois aggravated robbery, as odd as it may seem on its face, wouldn't satisfy the strict definition of a crime of violence because in its section there is allowed for a way to commit it with no physical harm, no physical contact, no pain inflicted, no violent act, and in a way that expands traditional robbery behind that of violence. Additionally, Illinois robbery cases, and interpreting the amount of force, I'm sure this panel is aware, is a very slight amount of harm. Specifically, the Illinois Supreme Court in Taylor, 1989, held that removing a pearl necklace from the victim's neck, just the force of pulling the necklace from the neck, was sufficient for robbery under Illinois. However, the problem with applying that to the 2010 Johnson opinion's definition of violence and the amount of violence is that that force is directed at property as opposed to a person, and pearl necklaces are not as strong as probably any one of us would like. It takes very little force whatsoever to break that. In light of the short amount of time and being able to reserve whatever I have left, it's the highlights of the position on the sentencing issue. Thank you, Your Honor. Thank you, counsel. May it please the court. Ankur Srivastava for the United States. The district court did not err when it found that robbery constitutes a crime of violence and applied the 16-level enhancement in guideline 2L1.2. And to- Ankur Srivastava, what- Asking a passenger to get out of the vehicle pulled over because the driver is using a cell phone. Part of your question fell away, Judge Goldner. Could you repeat it? Oh, I'm sorry. What's the basis for asking a passenger to get out of the car that was pulled over because a driver was using a cell phone? Well, I think what happened in this case is, and I believe this is cited in our brief or somewhere in the record, but there was an odor of cannabis emanating from the vehicle, and that's what led to the search of the passenger as well. But, Your Honor, I guess what it comes back to is that whether or not the stop was in fact lawful or was in fact a violation of the Fourth Amendment is irrelevant to the question of whether the defendant's identity can be suppressed. And so I'll talk a little bit more about that. First and foremost, the Supreme Court has already weighed in on this issue. And in INS v. Lopez Mendoza, they say that the body or identity of a defendant or respondent in a criminal or civil proceeding is never itself suppressible as a fruit of an unlawful arrest, even if it's conceded that an unlawful arrest, search, or interrogation occurred. You know, I'm reading of the identity evidence bar in Lopez Mendoza. Would there ever be a reason to hold a suppression hearing when identity evidence is challenged? I think there's a carve-out in Lopez Mendoza for flagrant violations of the Fourth Amendment where perhaps, you know, if the police were to, as an example, stop everyone who's in a building, obtain everyone's DNA, and try to match that identity to evidence from another offense, for example. That's very distinct from the situation that we have in this case, where the identity is simply used to determine who Mr. Segovia Morales was. And his very presence in the United States in conjunction with his illegal status, that in and of itself constitutes the crime. And the Seventh Circuit has also weighed in on this. In Garcia Garcia, the Seventh Circuit has previously held that a defendant's identity may not be suppressed even if it was obtained in violation of the Fourth Amendment. And there are good practical reasons for that ruling. Would such a rationale apply to other identity evidence, such as fingerprints or evidence of an outstanding warrant in a defendant's name? So the government's position on that is that evidence of fingerprints or evidence that would lead to the existence of a warrant is not suppressible. But I don't think the court even needs to reach that broad of a conclusion for purposes of this case. And I think your question is a good segue to talk about Utah v. Streiff, which was a Supreme Court case that's come down since the parties filed their briefs. And in Streiff, we had a scenario where an individual is stopped in violation of the Fourth Amendment. The police officer obtains that individual's identity, learns that there's a preexisting arrest warrant, places the individual under arrest, and then obtains incriminating evidence. And the question in that case was whether the existence of a valid preexisting warrant would attenuate the discovery of the evidence post-arrest from the illegal stop. But what's interesting in the court's analysis in Streiff is that it's taken as a given. It's taken for granted that the evidence of identity is not going to be suppressed there. In other words, there's never a question that perhaps this person's identity will be suppressed and the valid preexisting arrest warrant can't be executed for all the reasons we've talked about, because identity fundamentally is not suppressible. In every criminal case, with respect to jurisdiction, with respect to evidence, who a person is simply can't be suppressed, and that's what the Supreme Court has held, and that's what this court has held as well. And the defendant is asking you to overturn that sound precedent, but there are good reasons not to do that. And just to draw out what the defense is asking you to do here, if a district court were to grant a motion to suppress in the circumstances that the defendant had here, he would simply walk out of the courtroom and be subject to rearrest. And so there's no deterrence value in applying the Fourth Amendment under those circumstances. Perhaps you could return for a moment, if you would, Counsel, to the argument made by your colleague for the defense, that aggravated robbery under Illinois law is somewhat different and there are ways to commit that crime that do not involve force. You really don't talk much about that in your brief. Could you answer his argument? I can, Your Honor, and I'd like to begin doing that by directing the court to the Illinois aggravated robbery statute that the defendant was actually convicted under. That statute has since been repealed, but it was 720-ILCS-5-18-5. And applying the framework that the Supreme Court gave us in Mathis, it's clear that there are two separate crimes with distinct elements set forth in that aggravated robbery statute. So under subsection A, a person commits aggravated robbery when he or she takes property from the person or presence of another by the use of force or by threatening the imminent use of force while indicating verbally or by his or her actions to the victim that he or she is presently armed with a firearm or other dangerous weapon, including a knife, club, ax, or bludgeon. And this offense shall be applicable even though it is later determined that he or she had no firearm or other dangerous weapon, including a knife, club, ax, or bludgeon, in his or her possession when he or she committed the robbery. And so there are different means of satisfying subsection A, but all of those involve the use, attempted use, or threatened use of force. Then there's a separate subsection, subsection A-5, which talks about the ability to commit aggravated robbery by taking property from another, by injection, ingestion, and things like that. And what's clear in this case is that the defendant was convicted under subsection A. And I could direct the court to page 7 of the defendant's criminal history, which is attached as Exhibit 2 to the defendant's sentencing memorandum. But that makes it clear that the defendant's prior conviction for aggravated robbery was under subsection A. And what's clear about sub- And did he object at all at trial to that document? No, Your Honor. There was no objection to that document. So I don't believe it was disputed that the actual subsection under which the defendant was convicted was subsection A. And, in fact, during the sentencing hearing, the government did read into the record a portion of the indictment which set forth the facts, because where there are two distinct crimes like this, the court can apply the modified categorical approach. And the government read into the record that the defendant committed aggravated robbery  while indicating verbally or by his actions to the victim that he was presently armed with a firearm or other dangerous weapon. And that was on page 13 of the sentencing hearing transcript of January 20, 2016. And so it's really undisputed that the offense under which the defendant was convicted does require proof that the defendant used or threatened the use of force. And so based on that, the aggravated robbery statute under which the defendant was, in fact, convicted is, in fact, narrower than the common law generic version of robbery that has repeatedly been held to constitute a crime of violence under the guidelines. I think counsel mentioned that due to the recent case law, the definition or the commentary in 2L1.2, which states explicitly that robberies are a crime of violence, with that no longer in play, according to the defense, there's no definition of crime of violence. But that's not correct. Under 18 U.S.C. 16B, crime of violence is defined, and that's also incorporated into the guidelines under guideline 4B1.2. If there are no other questions, actually, at this point. Well, actually, you're not off the hook yet. You referred in your brief to the government's position that Johnson doesn't apply to the sentencing guidelines, such as the career offender guidelines. Have you abandoned that position in light of our own opinion in United States v. Hurlburt? Your Honor, I don't know what the department's position is on that question at this point, but I'd like to circle back and just state that there's no dispute under what provision of the aggravated robbery statute the defendant was convicted under, and the portion of the aggravated robbery statute that the defendant was convicted under unequivocally, categorically requires the use or threatened use of force. And so on that basis, the district court correctly applied the 16-level enhancement in guideline 2L1.2. So you said that you're not sure. I'm sorry, you know, there are some technical differences. You said you're not sure of the department's view. Did I get that right? You did, Your Honor. Okay. Okay. Thank you. If there are no additional questions, I'd just conclude by asking the court to confirm the conviction and sentence of the defendant. Thank you, Counsel. How much time? Thank you, Your Honor. I'd like to briefly first address the Fourth Amendment issue. In addressing Schriff, I disagree with the government's position as to what that case stands for. Again, in looking at just, and this is why. Schriff, the court, had a long factual analysis of the facts that were due during a motion to suppress, a motion to quash hearing before it. In those facts, what was determined was, again, that this officer, the arresting officer, had spent about a week or so surveilling a house that he received an anonymous tip from was selling drugs. And he developed some evidence and the defendant, Schriff, walked out of that house. He followed him to a convenience store and he stopped him and asked him for his name. Then he discovered the presence of an arrest warrant. So one of the differences here is there was an evidentiary hearing. There were a lot of facts detailed. And this officer, as the opinion alludes to, developed certain facts. He wasn't completely without facts that his tip was corroborated. Moreover, and I think most importantly, in Schriff, the ruling wasn't that identity is never suppressible under the Fourth Amendment. The ruling was, on the facts of that case, that according to attenuation in the three-prong test in Brown v. Illinois, the court found that the balance of the interest favored not suppressing that evidence. And in that case, so first of all, the Fourth Amendment, identity is treated no differently than other pieces of evidence, is what comes out of Schriff. There was an evidentiary hearing that was very useful. And the big thing that's different in that case than ours is the majority spent a lot of time talking about the ministerial duty that police officers have once they learn of an arrest warrant, that they have no choice but then to arrest and bring that person in. That's different here. There was no arrest warrant. And while there is information that was obtained that my client was illegally in this country, the same ministerial duty did not exist in this case as in Schriff. So Schriff affirms the fact that identity is subject to a Fourth Amendment analysis in terms of the evidentiary question, Lopez-Mendoza. Also, Schriff never even talked about Lopez-Mendoza, Garcia-Garcia, or any of those cases. And the common thread in all of those cases relied on in the district court, in this case, is that there were evidentiary hearings where other facts were deduced concerning the identity. Next is the, oh, and one other point, being arrested when walking out of the courtroom. This particular case, it's not going to happen. There's an INS hold on Mr. Chegoya-Morales. If this case is resolved, he's presumably going to be deported immediately, so there's no going back. I see I'm out of time. I don't know if there were any questions on the sentencing issues. I don't believe so. Thank you very much. Thank you. Thank you. Thank you, counsel. The court will take up the fourth case in ten minutes. We'll do a ten-minute recess.